**STATE of Missouri, Plaintiff–Respondent,**

v.

**Claude CHAMBERS, Defendant–Appellant.**

**No. 19511.**

Missouri Court of Appeals,
Southern District,
Division One.

May 1, 1995.

Rosalynn Koch, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Joanne E. Beal, Asst. Atty. Gen., Jefferson City, for respondent.

FLANIGAN, Judge.

A jury found defendant guilty of forgery, § 570.090,[1] and he was sentenced to imprisonment for 15 years. Defendant appeals.

Defendant's first point is that the evidence is insufficient to support the verdict, and the trial court erred in ruling otherwise, in that the evidence failed to establish beyond a reasonable doubt that defendant "made a check so that it purported to have a genuineness which it did not possess."

■ In reviewing defendant's challenge to the sufficiency of the evidence, this court accepts as true all of the evidence favorable to the state, including all favorable inferences drawn from the evidence, and disregards all evidence and inferences to the contrary. *State v. Grim*, 854 S.W.2d 403, 405[1] (Mo. banc 1993). Appellate review is limited to a determination of whether there is sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt. *Id.*

■ In addition to its formal portions, including defendant's status as a prior and a persistent offender based on pleaded prior convictions, the information charged that defendant, in violation of § 570.090.1(3), committed forgery "in that on or about the 8th day of July, 1993, in the County of Lawrence, State of Missouri, the defendant acting either alone or in concert with another, with purpose to defraud, made a check so that it

---

1. All references to statutes are to RSMo1994, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

purported to have a genuineness which it did not possess."[2]

State's Exhibit 5, on which the prosecution was based, was a check dated July 8, 1993, in the amount of $60, payable to "Country Market." It bore the purported signature of Densil Carney and was written on Carney's account in First Savings Bank of Aurora, Missouri. The lower left corner of the front of the check bore the notation "baby-sitting."

The state's principal witnesses were Tina Shockley, Densil Carney, and Saundra Huse. Their testimony included the following:

TINA SHOCKLEY: On July 8, 1993, I was working at Country Market, a convenience store in Aurora. State's Exhibit 5 is the check I cashed that day. I did not know the woman who gave me the check. I asked her for identification and put the numbers at the top of the check. She said that was her social security number. Her purchases cost less than $20, and I gave her the change in cash. The woman who gave me the check was with a girl named Anna whom I had seen in the store before.

DENSIL CARNEY: In June 1993, I had a checking account at First Savings Bank in Aurora. No one else was authorized to write checks on that account. In June or July 1993, I did not pay anybody to do any baby-sitting. A month or two before that, in 1993, I had some checks stolen when I was burglarized. I never traded at Ernie's Country Market in Aurora. I did not authorize anybody to cash a check at Ernie's Market on my account. I know defendant. About March or April of 1993, right before the checks were stolen, defendant stopped at my house and asked for directions. I did not write state's Exhibit 5. The signature on Exhibit 5 is not my signature. I did not authorize anybody to write that check.

SAUNDRA HUSE: On July 8, 1993, I was going to Aurora and defendant picked me up. Anna Hansen was with him. We went to Country Market. Defendant asked me if I would go in and cash Exhibit 5. Defendant handed Exhibit 5 to me. He told me to go in and get some stuff, I don't remember what. I went in and passed it off. I got change back. I brought it back to defendant and gave it to him. I did not write anything on that check. Anna Hansen was with me in the store. I asked defendant how come he didn't cash the check and he said he didn't have any identification. I did not see defendant write anything on the check.

Defendant bases his challenge to the sufficiency of the evidence on the following argument:

"A key element of the crime is that the defendant 'makes' something so that it purports to have a genuineness it does not possess. Defendant submits that the state failed to show that *defendant* was the one who forged the check. Ms. Huse, the only eyewitness tying defendant into the case, did not see defendant make any writing on the check. There was no evidence whatsoever that defendant wrote anything on the check.... Although both Ms. Huse and Mr. Carney denied having written on the check, that does not lead to the inference that defendant did so.... Since the state failed to present evidence showing that defendant 'made' a check, the evidence was insufficient to convict him of forgery."

"[T]he possession of and attempt to pass a forged instrument raises a presumption or

**2.** Section 570.090 reads, in pertinent part:

"1. A person commits the crime of forgery if, with the purpose to defraud, he
(1) Makes ... any writing so that it purports to have been made by another ...; or

.    .    .    .    .

(3) Makes ... anything other than a writing, so that it purports to have a genuineness ... which it does not possess...."

As used in § 570.090, "writing" includes "negotiable instruments." Section 570.010(13).

Defendant's brief, in a footnote to his argument under his first point, says: "Section 570.090.1(3) applies to forgeries of items 'other than a writing.' Defendant should have been charged under § 570.090.1(1) as the object of the forgery, a check, is a 'writing.' "

Defendant makes no contention that the foregoing mistake is fatal to the conviction. This court expresses no opinion on the validity of such a contention if it had been made. See *State v. Parkhurst*, 845 S.W.2d 31, 35[7–9] (Mo. banc 1992); *State v. White*, 608 S.W.2d 134 (Mo.App. 1980). In the trial court, defendant made no complaint concerning the sufficiency of the information or the correctness of the state's verdict-director and has not done so here.

inference that the person in possession forged it and, unless its possession is explained to the satisfaction of the trier of the facts, such presumption becomes conclusive." *State v. Taylor,* 778 S.W.2d 276, 279[2] (Mo. App.1989). To similar effect see *State v. Jones,* 703 S.W.2d 41, 42[2] (Mo.App.1985); *State v. Gantt,* 504 S.W.2d 295, 300[6] (Mo. App.1973).

Although the foregoing authorities involved situations where the cashing of the check was done by defendant himself rather than by an agent, this distinction is immaterial where, as here, the agent testified that her participation was innocent. It is not necessary that a defendant personally participate in each of the acts constituting the elements of the crime charged. *State v. Nguyen,* 880 S.W.2d 627, 634[10] (Mo.App.1994) (citing §§ 562.036 and 562.041)). It is sufficient if the evidence fairly shows an affirmative participation by the defendant in aiding another in the commission of the crime. *Id.*

The state's evidence showed that defendant possessed the check, the check was forged, and defendant, through his agent Saundra Huse, cashed the check.[3] There was also evidence that defendant was at Carney's house shortly before the check was stolen. Defendant presented no evidence. This court holds that the evidence was sufficient to support a finding that defendant made the check. Defendant's first point has no merit.

Defendant's second point is that the trial court erred in denying his motion for mistrial and in denying his motion to strike the testimony of Sheriff David Tatum to the effect that Tatum was seeking to arrest defendant but "not on that arrest warrant," because such evidence was inadmissible, irrelevant, and prejudicial to defendant in that it informed the jury that defendant was wanted for a different crime, and defendant was thereby deprived of his right to a fair trial.

The evidence challenged by defendant's second point occurred in two stages during the direct examination of state's witness

David Tatum, Sheriff of Lawrence County, as follows:

### Stage 1

"[The Prosecutor]: Q. As a result of Anna Hansen's interview and other evidence that you had collected in this particular case, did you seek an arrest warrant on anyone?

A. Yes, I did.

Q. Who did you seek an arrest warrant on?

A. Claude Chambers.

Q. Was a warrant issued for Mr. Chambers?

A. Yes, it was.

Q. Did you attempt to locate Mr. Chambers to serve that—that arrest warrant?

[Defense Counsel]: Objection, Your Honor. May we approach the bench?"

### Stage 2

[The Prosecutor]: Q. Now, as to the arrest warrant that you had for Mr. Chambers, did you attempt to locate Mr. Chambers?

A. Not on that arrest warrant.

Q. Okay. Did you have another arrest—Well, strike that.

[Defense Counsel]: Objection, Your Honor.

[The Prosecutor]: Strike that.

The Court: Okay.

[Defense Counsel]: May we approach the bench, Judge?

The Court: Sure."

Prior to Stage 1, at a hearing on defendant's motion in limine, defense counsel asked the court to suppress evidence that defendant attempted to flee in a vehicle. The prosecutor told the court that defendant was in his car, that the sheriff told defendant he had a warrant for his arrest and attempted to arrest him, and that defendant drove away. The prosecutor also said that he un-

---

**3.** *See Dobson v. State,* 255 S.W. 756, (Tex.Crim. App.1923), upholding a forgery conviction on similar facts.

derstood the sheriff had informed the defendant that he was under arrest based on a warrant issued for the offense on trial.

At the bench conference after Stage 1, the court asked the prosecutor whether the prosecutor knew whether the arrest warrant was issued for the offense on trial. The prosecutor said, "I can't be clear on that, Judge, it's my understanding I think it was." The court overruled defendant's objection and proceedings returned to open court and Stage 2 occurred.

Outside the hearing of the jury, defense counsel moved for a mistrial. Apparently after conferring with the witness, the prosecutor said that the witness was there for the purpose of arresting defendant on another warrant and that he intended to stop questioning the witness at that point.

The court informed defense counsel that he would overrule the motion for a mistrial but would admonish the jury if defense counsel so requested. Defense counsel asked the court to admonish the jury to disregard "all testimony from this witness." The court said that request was denied as "overbroad." The court said to defense counsel, "Now we have two choices, some specific admonition other than what you've already asked me or just leaving it alone so as not to bring it to their attention." Defense counsel then said, "I think the best tack to take would be to just avoid it."

"The prosecution is not permitted to introduce evidence of the circumstances of the arrest of the person accused where such circumstances have no probative value in establishing his guilt." *State v. Myrick*, 473 S.W.2d 402, 404 (Mo.1971). However, "[c]ircumstances surrounding the arrest of a defendant are generally admissible where they tend to establish an attempt by the defendant to resist, evade, escape or avoid arrest." *State v. Jones*, 583 S.W.2d 212, 215[2] (Mo. App.1979). To similar effect see *State v. Wallace*, 644 S.W.2d 382, 384[1] (Mo.App. 1982).

■ Harmless error in the admission of evidence does not warrant reversal of a conviction. *State v. Gregory*, 822 S.W.2d 946, 951 (Mo.App.1992). Error in the admission of evidence is harmless "only if we are 'able to declare a belief that it was harmless beyond a reasonable doubt.' *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705." *State v. Miller*, 650 S.W.2d 619, 621[2] (Mo. banc 1983). "To sustain a claim that error in the admission of evidence is harmless, the record must demonstrate 'that the defendant was not injured by the error as by showing that the jury disregarded or could not have been influenced by the evidence.' *State v. Degraffenreid*, 477 S.W.2d 57, 64 (Mo. banc 1972)." *Gregory*, at 951[6]. "We will reverse a conviction for the improper admission of testimony only where the error is prejudicial." *State v. Isa*, 850 S.W.2d 876, 895[45] (Mo. banc 1993).

■ The jury heard Sheriff Tatum testify, without objection, that, as a result of the sheriff's interview with Anna Hansen and other evidence that he had collected, he sought an arrest warrant for defendant, and one was issued. The prosecutor then asked the witness, in the presence of the jury, whether the witness had attempted to locate defendant "as to the arrest warrant that you had." That was a reference to the forgery warrant. The witness answered, "Not on that arrest warrant." No additional testimony was given by the witness. Defense counsel declined the trial court's offer to admonish the jury to disregard the challenged testimony. There is no claim the prosecutor acted in bad faith in posing the question.

"A mistrial is a drastic remedy, granted only in extraordinary circumstances. Because the trial court observes the testimony and its impact, appellate review is only for abuse of discretion." *State v. Parker*, 886 S.W.2d 908, 922[37, 38] (Mo. banc 1994) (citations omitted). This court holds that the trial court did not abuse its discretion in denying defendant's motion for mistrial or in denying defendant's motion to strike "all" the testimony of the witness. See *State v. Crawford*, 619 S.W.2d 735, 740[7] (Mo.1981); *State v. Mitchell*, 674 S.W.2d 184, 185[2] (Mo.App. 1984); *State v. Warden*, 591 S.W.2d 170, 172[5, 6] (Mo.App.1979). Defendant's second point has no merit.

■ Defendant's third point is that the trial court erred in sentencing defendant to imprisonment for 15 years "because the maximum term for which defendant could be sentenced was 7 years, in that defendant had been found by the court to be a prior offender."

Rule 29.15(a) reads, in pertinent part:

"A person convicted of a felony after trial claiming that the conviction or sentence imposed violate the constitution and laws of this state or the constitution of the United States, that the court imposing the sentence was without jurisdiction to do so, or *that the sentence imposed was in excess of the maximum sentence authorized by law* may seek relief in the sentencing court pursuant to the provisions of this Rule 29.15. This Rule 29.15 provides the exclusive procedure by which such person may seek relief in the sentencing court for the claims enumerated...." (emphasis added).

The trial court, at the conclusion of final sentencing, pursuant to Rule 29.07(b)(4), advised defendant of his right to proceed under Rule 29.15. Defendant did not do so.

In *State v. Wheat*, 775 S.W.2d 155 (Mo. banc 1989), defendant, on direct appeal from a felony conviction based on a jury verdict, sought to challenge the conviction on the ground that it was a violation of his constitutional right to effective assistance of counsel. The court held defendant's failure to file a Rule 29.15 motion waived the right to raise that claim. The court rejected defendant's argument that appellate review of the claim was permissible on direct appeal where the record was sufficient to permit review.

The court said, at 157–158[1]:

"Under the explicit language of [Rule 29.15], the scheme fashioned there provides the *'exclusive procedure'* by which a person may seek relief in the sentencing court, and as noted above, failure to file such motion constitutes a complete waiver of the right. Not only are defendants given clear notice of these procedures by the rule, but here defendant was personally cautioned by the trial judge as to the consequences if he failed to preserve his right. From this it necessarily follows that claims for relief cognizable under the rule may not be considered when presented for the first time on appeal; this proposition flows from the plain language of Rule 29.15."

To similar effect see *State v. Sheffield*, 821 S.W.2d 859, 864[6] (Mo.App.1991); *State v. Riley*, 787 S.W.2d 314, 316[2, 3] (Mo.App. 1990); *State v. Johnston*, 786 S.W.2d 220, 222[3] (Mo.App.1990).

By not filing a Rule 29.15 motion, defendant waived his right to make the complaint set forth in his third point.[4]

The judgment is affirmed.

SHRUM, C.J., and MONTGOMERY, J., concur.

---

4.   A gratuitous review of the record discloses that the 15–year sentence was authorized.